# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE MOUNT SINAI HOSPITAL<br>1 Gustave L. Levy Place<br>New York, New York 10029 | )<br>)<br>)<br>) |
| CLARA MAASS MEDICAL CENTER<br>1 Clara Maass Drive<br>Belleville, New Jersey 07109 | ) Civil Action No._____<br>)<br>)<br>) |
| JERSEY CITY MEDICAL CENTER<br>355 Grand Street<br>Jersey City, New Jersey 07304 | )<br>)<br>)<br>) |
| MONMOUTH MEDICAL CENTER, INC.<br>300 Second Avenue<br>Long Branch, New Jersey 07740 | )<br>)<br>)<br>) |
| MONMOUTH MEDICAL CENTER SOUTHERN<br>CAMPUS f/k/a KIMBALL MEDICAL CENTER, INC.<br>600 River Avenue<br>Lakewood, New Jersey 08701 | )<br>)<br>)<br>)<br>) |
| NEWARK BETH ISRAEL MEDICAL CENTER<br>201 Lyons Avenue<br>Newark, New Jersey 07112 | )<br>)<br>)<br>) |
| RWJ BARNABAS HEALTH, INC.,<br>f/k/a LIBERTY HEALTHCARE SYSTEM, INC.,<br>f/d/b/a GREENVILLE HOSPITAL<br>95 Old Short Hills Road<br>West Orange, NJ 07052 | )<br>)<br>)<br>)<br>)<br>) |
| RWJ BARNABAS HEALTH, INC.,<br>f/k/a LIBERTY HEALTHCARE SYSTEM, INC.,<br>f/k/a LIBERTY RIVERSIDE HEALTHCARE, INC.,<br>f/d/b/a MEADOWLANDS HOSPITAL MEDICAL<br>CENTER<br>95 Old Short Hills Road<br>West Orange, NJ 07052 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| SAINT BARNABAS MEDICAL CENTER<br>94 Old Short Hills Road<br>Livingston, New Jersey 07039 | )<br>)<br>) |

| | |
|---|---|
| SAINT PETER'S UNIVERSITY HOSPITAL, INC.<br>254 Easton Avenue<br>New Brunswick, New Jersey 08901<br><br>UNITED HEALTH SERVICES HOSPITALS, INC.<br>d/b/a UHS HOSPITALS<br>10-42 Mitchell Avenue<br>Binghamton, New York 13903<br><br>Plaintiffs,<br>    v.<br><br>ALEX M. AZAR, II, Secretary,<br>United States Department of<br>Health and Human Services,<br>200 Independence Ave. S.W.<br>Washington, District of Columbia 20201,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT

### NATURE OF ACTION

1.      This case concerns the proper treatment, in calculating Medicare disproportionate share hospital ("DSH") payments, of the inpatient hospital days of patients who were enrolled in a Medicare Advantage plan under Part C of the Medicare Act. The ultimate issue is whether enrollees in Medicare Part C should not be treated as entitled to benefits under Part A such that Part C inpatient hospital days are not counted in the Part A/SSI fraction of the DSH payment formula but are counted in the Medicaid fraction of the formula.

2.      In *Allina Health Services v. Sebelius*, the D.C. Circuit affirmed this Court's decision declaring procedurally invalid and vacating a rule, adopted in 2004, that changed the defendant Secretary's policy on the treatment of Part C inpatient hospital days to include them in the Medicare Part A/SSI fraction and exclude them from the numerator of the Medicaid fraction in calculating the Medicare DSH payment. 746 F.3d 1102, 1111 (D.C. Cir. 2014) ("*Allina I*").

3.  In 2017, the Court of Appeals issued another decision in the *Allina* litigation, ruling that the Secretary's continued application after *Allina I* of the part C days policy adopted in the 2004 rule is a procedurally invalid "change" from the rule in effect before the now-vacated 2004 rulemaking because the Secretary did not engage in the notice-and-comment rulemaking procedure required under the Medicare Act, 42 U.S.C. § 1395hh. *Allina Health Servs. v. Price*, 863 F.3d 937, 944 (D.C. Cir. 2017) ("*Allina II*").

4.  On June 3, 2019, the Supreme Court upheld the decision of the D.C. Circuit in *Allina II* that the Secretary could not implement the same policy adopted in the vacated 2004 rule through a posting on its website instead of engaging in notice-and-comment rulemaking under the Medicare Act, 42 U.S.C. § 1395hh. *Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019).

5.  Although the D.C. Circuit has now twice ruled against the Secretary's 2004 policy, the Secretary has not acquiesced in either of those decisions. Instead, the Secretary's agency has continued to apply the Part C days policy adopted in the vacated 2004 rule (hereinafter the "Part C days policy"), including in the payment determinations at issue for the plaintiff hospitals.

6.  The continued application of the 2004 rule and the Part C days policy adopted in that rule is not only procedurally invalid, as the D.C. Circuit has twice ruled, it is also substantively invalid. The rule and policy fail any test of reasoned decision-making and are inconsistent with congressional intent in providing for supplemental payments to hospitals that serve a disproportionate share of low-income patients.

7.  The plaintiff hospitals, therefore, seek an order setting aside the Secretary's DSH payment determinations and directing the Secretary to recalculate them by excluding Part C days from the Medicare Part A/SSI fraction and including the Medicaid-eligible portion of those days in the numerator of the Medicaid fraction.

**JURISDICTION AND VENUE**

8.  This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*.

9.  Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(l).

10. Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l).

**PARTIES**

11. The plaintiff hospitals in this action and the hospital fiscal years at issue are as follows (for FYs ending in 2013, the matter at issue involves only patient discharges that occurred on or before September 30, 2013):

(1) The Mount Sinai Hospital, Provider No. 33-0024, fiscal years ending December 31, 2005; December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2010; December 31, 2011; December 31, 2012; and December 31, 2013;

(2) Clara Maass Medical Center, Provider No. 31-0009, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2012; and December 31, 2013;

(3) Jersey City Medical Center, Provider No. 31-0074, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2010; December 31, 2012; and December 31, 2013;

(4) Monmouth Medical Center, Inc., Provider No. 31-0075, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2012; and December 31, 2013;

(5) Monmouth Medical Center Southern Campus f/k/a Kimball Medical Center, Inc., Provider No. 31-0084, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2012; and December 31, 2013;

(6) Newark Beth Israel Medical Center, Provider No. 31-0002, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2012; and December 31, 2013;

(7) RWJ Barnabas Health, Inc., f/k/a Liberty HealthCare System, Inc. f/d/b/a Greenville Hospital, Provider No. 31-0105, fiscal year ending June 30, 2007. Liberty HealthCare System, Inc. closed Greenville Hospital on April

        23, 2008.  The entity now known as RWJBarnabas Health, Inc. acquired Liberty HealthCare System, Inc. and its interests effective June 1, 2014;

(8)     RWJ Barnabas Health, Inc., f/k/a Liberty HealthCare System, Inc., f/k/a Liberty Riverside HealthCare, Inc. f/d/b/a Meadowlands Hospital Medical Center, Provider No. 31-0118, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; and December 6, 2010.  Liberty HealthCare System, Inc. sold Meadowlands Hospital Medical Center effective December 7, 2010.  The entity now known as RWJBarnabas Health, Inc. acquired Liberty HealthCare System, Inc. and its interests effective June 1, 2014;

(9)     Saint Barnabas Medical Center, Provider No. 31-0076, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2012; and December 31, 2013;

(10)     Saint Peter's University Hospital, Inc., Provider No. 31-0070, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2010; December 31, 2011; December 31, 2012; and December 31, 2013; and

(11)     United Health Services Hospitals, Inc. d/b/a UHS Hospitals, Provider No. 33-0394, fiscal years ending December 31, 2006; December 31, 2007; December 31, 2008; December 31, 2009; December 31, 2010; and December 31, 2012.

12.     The defendant is Alex M. Azar, in his official capacity as Secretary of the United States Department of Health and Human Services ("Secretary"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

13.     The Centers for Medicare & Medicaid Services ("CMS") is the component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program.  CMS was formerly known as the Health Care Financing Administration.  References to CMS herein are meant to refer to the agency and its predecessors.

## **LEGAL AND REGULATORY BACKGROUND**

### **Medicare DSH Payment**

14. Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(l). Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments. *Id.* One of the PPS payment adjustments is the DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

15. A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates per discharge. *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106. A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage." *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). The disproportionate patient percentage determines both a hospital's qualification for the DSH payment and the amount of the payment. *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d). The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

16. One fraction that is used to compute the DSH payment is commonly known as the "Medicaid fraction." The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [the Medicaid Act, title XIX of the Social Security Act], but who were *not entitled to benefits under part A* of [the Medicare Act] and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). As reflected in the italicized language above, the numerator of the Medicaid fraction consists of the inpatient hospital days of patients who were both eligible for medical assistance under the Medicaid Act and "not entitled to benefits under part A" of the Medicare Act.

17. The other fraction that is used to compute the DSH payment is the "Medicare part A/SSI fraction" or "SSI fraction." The statute defines this fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A* of [the Medicare Act] and were entitled to supplemental security income benefits (excluding any State supplementation) . . . and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A* of [the Medicare Act] . . . .

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added). As the italicized language indicates, the Medicare Part A/SSI fraction consists solely of days for patients who were "entitled to benefits under part A" of Medicare. The denominator of the Medicare Part A/SSI fraction includes all Medicare Part A days, whereas the numerator includes only those Part A days for patients who are also entitled to social security income ("SSI") benefits under title XVI of the Social Security Act. The Medicare Part A/SSI fraction is computed for each federal fiscal year by CMS, and must be used to compute a hospital's DSH payment for the cost reporting period beginning in the federal fiscal year. 42 C.F.R. §§ 412.106(b)(2)-(3).

## Medicare Part C

18. Section 4001 of the Balanced Budget Act of 1997, Pub. Law No. 105-33, added Part C to the Medicare Act to establish Medicare Advantage, originally called Medicare+Choice. A Medicare beneficiary can elect to receive Medicare benefits either through the original fee-for-service program under Medicare parts A and B, or through enrollment in a Medicare Advantage plan under Medicare Part C. 42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50; *see also* 63 Fed.

Reg. 34,968, 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B . . . may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan.") (emphasis added).

19. Prior to the 2004 rule at issue, "the Secretary treated Part C patients as *not* entitled to benefits under Part A." *Allina I*, 746 F.3d at 1106. The agency's pre-2004 regulation limited the Medicare Part A/SSI fraction to Medicare patient days that were covered, or paid, by Medicare Part A and included other Medicare patient days (not covered under Part A) in the numerator of the Medicaid fraction to the extent that those patients were also eligible for Medicaid. *See* 42 C.F.R. § 412.106(b)(2)(i) (2003); *see also* 42 C.F.R. § 409.3 (defining "covered" as services for which payment is authorized). As the Secretary explained when he adopted it, the pre-2004 regulation mandated that only "covered Medicare Part A inpatient days" be included in the Part A/SSI fraction. 51 Fed. Reg. 16,772, 16,788 (May 6, 1986); *see also* 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986) (stating that limiting the Medicaid fraction to inpatient days where "the Medicaid program is the primary payor" was "consistent with" the Part A/SSI fraction being limited to "covered days"); *Catholic Health Initiatives-Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013) (noting that the pre-2004 regulation unambiguously limited the Part A/SSI fraction to "covered Medicare Part A inpatient days").

20. Written guidance prior to 2004 repeatedly expressed the Secretary's policy that Part C days, as days for which patients were not entitled to Part A payment, were to be excluded from the Part A/SSI fraction. *See, e.g.*, *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 15 (D.C. Cir. 2011) (describing written guidance). This guidance included instructions to hospitals and program memoranda transmitting the Part A/SSI fractions on an annual basis. *See id.*

21. The agency's consistent policy and practice, before the adoption of the 2004 rule, was to treat Part C days as *not* Part A days. *Northeast Hosp.*, 657 F.3d at 16-17 (Part C days policy announced in 2004 "contradicts [Secretary's] former practice of excluding M+C days from the Medicare fraction"); *Sw. Consulting DSH Medicare + Choice Days Grps. v. BlueCross BlueShield Ass'n,* PRRB Dec. No. 2010–D52, 2010 WL 4211391, at *12 (Sept. 30, 2010), *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 82,679 (reviewing evidence that from 1999 to 2004, the Secretary "never count[ed] M+C days in the [Medicare] fraction except rarely, and then by mistake").

22. In a 2003 proposed rule, the Secretary proposed "to clarify" his long-held position that "once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage." 68 Fed. Reg. 27,154, 27,208 (May 19, 2003). Further, the agency explained that "[t]hese days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for a [Part C] beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction." *Id*. The Secretary explained that "once a beneficiary has elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under Part A." *Id.*

23. In the preamble to a final rule adopted in 2004, however, the Secretary reversed course and "abruptly announced a change in policy." *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 78 (D.D.C. 2012), *aff'd*, 746 F.3d at 1107-10. That 2004 rule announced that the Secretary would "adopt a policy" to include Part C days in the Medicare Part A/SSI fraction and exclude them from the Medicaid fraction effective October 1, 2004. 69 Fed. Reg. 48,916, 49,099 (Aug.

9

11, 2004); *see also Northeast Hosp.*, 657 F.3d at 16 ("[I]n the 2004 rulemaking [the Secretary] announced that she was 'adopting a policy' of counting [Part C] days in the Medicare fraction").

24. In the 2004 final rule, the Secretary amended the regulation text by deleting the word "covered." 69 Fed. Reg. at 49,246. When CMS initially transmitted the Part A/SSI fractions for federal fiscal years 2005 and 2006, however, those fractions continued to exclude Part C days. *See* CMS Pub. 100-04, Transmittal 1091 (Oct. 27, 2006), *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 156,277 (transmitting federal fiscal year 2005 Part A/SSI fractions and specifying that the fractions include only "covered Medicare days," and referring to the ratio of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days attributable to SSI recipients"); CMS Pub. 100-04, Transmittal 1396 (Dec. 14, 2007), *reprinted in id.* ¶ 156,930 (same for federal fiscal year 2006 fractions).

25. In July 2007, CMS issued a revision to a Medicare program manual, with a "purported 'effective date' of October 1, 2006," that permitted hospitals to submit the data necessary to implement the Part C days policy. *Allina Health Servs.*, 904 F. Supp. 2d at 82.

26. Thereafter, in August 2007, the Secretary amended the text of the DSH regulation governing Part C days without affording hospitals prior notice or opportunity for comment. 72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007).

27. Following the amendment in 2007, the regulation provided that the Part A/SSI fraction includes all patient days (not just "covered" days) for "patients entitled to Medicare Part A (*or Medicare Advantage (Part C)*)." *Id.* at 47,411 (amending 42 C.F.R. §§ 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added). The amendment of the regulation was made effective October 1, 2007, the beginning of federal fiscal year 2008. *Id.* at 47,130; *see also Allina Health Servs.*, 904 F. Supp. 2d at 82.

**The *Allina I* Litigation**

28. In July 2009, the Secretary published Part A/SSI fractions for hospital cost reporting periods beginning in federal fiscal year 2007. These fractions for the first time included Part C days.

29. In *Allina I*, hospitals challenged the applicability of the 2004 rule on the treatment of Part C days in the DSH payment calculation for cost reporting periods beginning in federal fiscal year 2007, contending, among other things, that the abrupt reversal in policy did not comport with notice-and-comment requirements and was not the product of reasoned decision making because the agency failed to acknowledge or explain its departure from past policy.

30. This Court agreed and held that the Part C days policy announced in the 2004 final rule was not a logical outgrowth of the 2003 proposed rule. 904 F. Supp. 2d at 89-92. This Court also held that the "cursory explanation in the 2004 Final Rule [for the reversal in policy] failed to meet the requirements of the APA" because "the Secretary[] fail[ed] to acknowledge her 'about-face,'" and "her reasoning for the change was brief and unconvincing." *Id.* at 93 (quoting *Northeast Hosp.*, 657 F.3d at 15). Accordingly, this Court concluded that "[t]he portion of the 2004 Final Rule … that announced the Secretary's interpretation of the Medicare Disproportionate Share Hospital Fraction, as codified in 2007 at 42 C.F.R. § 412.106(b)(2) and as further modified in 2010, will be vacated, and the case will be remanded to the Secretary for further action consistent with this Opinion." *Id.* at 95.

31. While the Secretary's appeal from this Court's decision in *Allina I* was pending before the Court of Appeals, the agency engaged in a new rulemaking on the treatment of Part C days in calculating DSH payments, effective only prospectively, beginning October 1, 2013. In that rulemaking, the agency "proposed to readopt the policy of counting the days of patients enrolled in [Part C] plans in the Medicare fraction" "in an abundance of caution." 78 Fed. Reg.

50,496, 50,615 (Aug. 19, 2013).  The resulting rule governing the DSH payment calculation, effective as of October 1, 2013, is the same as the 2004 rule.  *See id.* at 50,619 (rule "readopt[ion]" applies to "FY 2014 and subsequent years").

32. On April 1, 2014, the D.C. Circuit affirmed this Court's *Allina I* decision on the merits, "agree[ing] with the district court that the Secretary's final rule was not a logical outgrowth of the proposed rule."  746 F.3d at 1109.  Because this procedural failure was a sufficient basis to vacate the rule, the D.C. Circuit did not reach the arbitrariness of the Secretary's explanation.  *Id.* at 1111.

33. With respect to remedy, the D.C. Circuit held that this Court "correctly concluded that vacatur was warranted."  *Id.*  The court reversed, however, a part of this Court's order that required "the Secretary to recalculate the hospitals' reimbursements 'without using the interpretation set forth in the 2004 Final Rule.'"  *Id.* (quoting the Post-Judgment Order).  The Court of Appeals instead remanded, explaining that the "question whether the Secretary could reach the same result" on remand as would have applied under the vacated rule "was not before the district court."  *Id.*

### The *Allina II* Litigation

34. In mid-June 2014, the agency published on its website Part A/SSI DSH fractions for federal fiscal year 2012, having included Part C days in the calculation, for all hospitals in the country.  The agency provided no explanation at all for its decision to include Part C days in the Part A/SSI fractions for fiscal year 2012.  Instead, the agency issued the fractions exactly as it had for prior years, either applying the 2004 rule as if the *Allina I* vacatur had never happened or issuing a new rule without notice-and-comment rulemaking.  Certain of the plaintiff hospitals in the *Allina I* litigation filed a separate action in this Court challenging this agency's issuance of the FY 2012 Part A/SSI fractions.  The Secretary moved to dismiss, asserting that his Board incorrectly

12

granted expedited judicial review, but this Court rejected that motion. This Court then granted the Secretary's motion for summary judgment, *Allina Health Servs. v. Burwell*, 201 F. Supp. 3d 94 (D.D.C. 2016), which the hospitals appealed.

35.     In 2017, the Court of Appeals reversed, agreeing with the hospitals that the Secretary "violated the Medicare Act by failing to provide for notice and comment" before readopting the Part C days policy from the invalidated 2004 rule. *Allina II*, 863 F.3d at 942. The Court of Appeals concluded that the Medicare Act, 42 U.S.C. § 1395hh(a)(2), required rulemaking for any "(1) 'rule, requirement, or other statement of policy' that (2) 'establishes or changes' (3) a 'substantive legal standard' that (4) governs 'payment for services,'" and that the Secretary's issuance of the fiscal year 2012 Part A/SSI DSH fractions including Part C days satisfied each of these factors. *Id.* The Court of Appeals also found that the Secretary violated the logical outgrowth requirement of the Medicare Act, 42 U.S.C. § 1395hh(a)(4), which provides that "if a regulation includes 'a provision that is not a logical outgrowth of a previously published notice of proposed rulemaking,' that provision may not become legally operative until it has gone through notice-and-comment rulemaking." *Allina II*, 863 F.3d at 945.

36.     On June 3, 2019, the Supreme Court affirmed the Court of Appeals' ruling in *Allina II*. *Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019). The Supreme Court held that the Secretary's 2014 application of the Part C days policy was invalid because it was adopted without notice-and-comment rulemaking under the Medicare Act, 42 U.S.C § 1395hh(a)(2). *Id.* at 1810-14. The Supreme Court's decision did not disturb the Court of Appeals' ruling that the readopted 2004 rule is invalid under 42 U.S.C. § 1395hh(a)(4) because it was not a logical outgrowth of the proposed rule and therefore required notice-and-comment rulemaking. *Id.* at 1816.

**Review of Medicare Payment Determinations**

37. After the close of each fiscal year, a hospital is required to file a "cost report" with a Medicare Administrative Contractor designated by the Secretary. 42 C.F.R. §§ 413.20, 413.24.

38. The Medicare Administrative Contractor analyzes a hospital's cost report and issues a year-end determination as to the amount of Medicare program reimbursement due the hospital for services furnished to Medicare patients during the fiscal year covered by the cost report. *See* 42 C.F.R. § 405.1803; *see also In re Medicare Reimbursement Litig.,* 309 F. Supp. 2d 89, 92 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005).

39. A hospital may appeal a Medicare Administrative Contractor's determination as to the total amount of Medicare program reimbursement due the hospital for the fiscal year covered by a cost report to the Secretary's Provider Reimbursement Review Board. *See* 42 U.S.C. § 1395oo(a)(1); 42 C.F.R. §§ 405.1835–405.1877.

40. The Medicare Act authorizes the Provider Reimbursement Review Board to determine that it is without authority to decide the question of law or regulations relevant to a matter in controversy presented in an appeal and grant the right to expedited judicial review. 42 U.S.C. § 1395oo(f)(1).

41. Pursuant to the Secretary's regulations, the Board is bound by agency rules and rulings, like the 2004 rule at issue. 42 C.F.R. § 405.1867. Accordingly, the statute allows a hospital to request a Board determination as to its authority to decide a question of law or regulations and permission to initiate an action in this Court if the Board determines that expedited judicial review is appropriate or fails to make a determination as to its authority within 30 days after the hospital submits its request for such a determination. *See* 42 U.S.C. § 1395oo(f)(1).

**FACTS SPECIFIC TO THIS CASE**

42. Each of the 11 plaintiff hospitals received a notice of program reimbursement that included a final DSH payment determination for each of the cost reporting periods at issue.

43. Each of the plaintiff hospitals appealed the notice of program reimbursement to the Secretary's Board and specifically challenged the treatment of Medicare Part C patient days in the Medicare DSH calculation. The hospitals contested the DSH payment amount for the fiscal years at issue on the ground that its calculation wrongly counted Medicare Part C patient days in the Medicare Part A/SSI fraction and excluded them from the numerator of the Medicaid fraction.

44. Each of those appeals was timely filed with the Secretary's Board. The Board assigned those appeals case numbers 14-1292GC, 14-1293GC, 14-3413GC, 14-3414GC, 14-4040GC, 14-4041GC, 14-4042GC, 14-4043GC, 15-1767GC, 15-1769GC, 13-1019, 13-1299, 14-0514, 14-1994, 15-1770, 16-0413, 14-1295GC, 14-1296GC, 14-3415GC, 14-3416GC, 14-4188GC, 14-4189GC, 15-0968GC, 15-1060GC, 15-3268GC, 15-3269GC, 16-2478GC, 14-1294, 14-3390, 14-4185, 15-3034, 16-0052, 16-2335, 17-2183, 18-1095, 16-2477GC, 16-2260, 14-3324, 14-4028, 16-0484, 16-0674, 17-0822, 17-1559, 18-1114, and 19-0714.

45. The plaintiff hospitals requested that the Board grant expedited judicial review with respect to the DSH Part C issue in the appeals at issue.

46. By letters dated February 18, 2020, February 19, 2020, February 20, 2020, February 21, 2020, March 9, 2020, and March 18, 2020, attached as Exhibits A-F, the Provider Reimbursement Review Board granted the hospitals' requests for expedited judicial review. The Board recognized that the Secretary has not acquiesced in the decision in *Allina*, concluded that the Board remains bound by the terms of the 2004 rule on the treatment of Part C patient days in the DSH payment calculation, 42 C.F.R. § 412.106(b)(2)(i)(B) and (b)(2)(iii)(B) (2004), and

concluded the Board lacks authority to decide the validity of the Part C days policy adopted in the 2004 rule and applied in the payment determinations at issue.

47. By the filing of this Complaint, the plaintiff hospitals have timely commenced this action for judicial review under 42 U.S.C. § 1395oo(f)(1).

### CLAIMS FOR RELIEF

48. The Medicare Act provides for judicial review of the question presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the APA. 42 U.S.C. § 1395oo(f)(l).

49. The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706(2).

50. The Secretary's calculation of the plaintiff hospitals' DSH payments is procedurally and substantively invalid, and should be set aside pursuant to the Medicare Act and the APA because the agency's application of the Part C days policy in calculating DSH payments is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of statutory authority, without observance of procedure required by law, and unsupported by substantial evidence, including for (but not limited to) the reasons more specifically described below.

### COUNT I – FAILURE TO COMPLY WITH MEDICARE ACT NOTICE AND COMMENT RULEMAKING REQUIREMENT

51. The Secretary's DSH determinations are procedurally invalid under the Medicare Act, 42 U.S.C. § 1395hh, because they result from the application of a policy that was required to but did not go through notice and comment rulemaking.

52. The Medicare Act requires notice and comment rulemaking for a "rule," a "requirement" or a "statement of policy" that "establishes or changes a substantive legal standard governing . . . the payment for services." 42 U.S.C. § 1395hh(a)(2). *See Allina II*, 139 S. Ct. at 1810-14 (upholding the D.C. Circuit's finding that Secretary "violated" the rulemaking provisions of the Medicare Act under 42 U.S.C. § 1395hh(a)(2) by failing to provide for notice and comment).

53. Further, the Medicare Act provides that if a final rule is not a logical outgrowth of a proposed rule, then it "shall not take effect" until there is further opportunity for comment and publication again as a final rule. 42 U.S.C. § 1395hh(a)(4). *See Allina II,* 863 F.3d at 945 (the Secretary violated 42 U.S.C. § 1395hh(a)(4) by not providing a 'further opportunity for public comment and a publication of the [2004] provision again in a final regulation" before reimposing the 2004 rule vacated for violating the logical outgrowth requirement).

54. This Court has already ruled, and the Court of Appeals has affirmed this Court's ruling, that the 2004 rule was not a logical outgrowth of the proposed rule.

### COUNT II – FAILURE TO COMPLY WITH GOVERNING REGULATION

55. The Secretary's DSH payment determinations are invalid under the APA because they violate the Secretary's pre-2004 regulation.

56. Under established circuit precedent applying the APA, "[u]nless and until [an agency] amends or repeals a valid legislative rule or regulation, [the] agency is bound by such a

rule or regulation," *Am. Fed'n of Gov't Emps. v. Fed. Lab. Rels. Auth.*, 777 F.2d 751, 759 (D.C. Cir. 1985).

57. The pre-2004 regulation, which was restored by the Court's vacatur of the 2004 rule in *Allina I*, requires the exclusion of Part C patient days from the number of part-A-entitled days in the Medicare DSH calculation. That pre-2004 regulation specifies that the Part A/SSI fraction includes only "covered" patient days, *see* 42 C.F.R. § 412.106(b)(2)(i) (2003), meaning days paid under Part A. *Id.* § 409.3; *see also Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013). Part C patient days are not covered by Part A because payment by private Part C Medicare Advantage plans for services furnished to their Part C patients is *not* payment by Part A. *See* 42 U.S.C. § 1395w-21(a)(1); *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 6 (D.C. Cir. 2011).

58. The Secretary cannot effectively amend the pre-2004 reinstated legislative rule except through notice and comment rulemaking. What an agency does through notice and comment can only be undone by notice and comment. *See Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 241 (D.C. Cir. 1992) ("Once a regulation is adopted by notice-and-comment rulemaking . . . its text may be changed only in that fashion.") (quoting *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d 408, 413 (7th Cir. 1987) (Easterbrook, J.)).

59. The Secretary's DSH payment determinations are therefore contrary to his pre-2004 regulation, which is the operative rule following *Allina I*'s vacatur of the 2004 rule, and invalid under the APA. 5 U.S.C. § 706(2).

### COUNT III – ARBITRARY AND CAPRICIOUS DECISION-MAKING

60. The Secretary's DSH payment determinations are substantively invalid because the agency did not "consider the matter in a detailed and reasoned fashion" in adopting the 2004 rule

(or otherwise) and the Part C days policy adopted in that rule is not "consistent with the underlying statutory scheme in a substantive sense." *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 1004 (D.C. Cir. 2001).

61. Further, the Secretary has not acknowledged that the policy adopted in the 2004 rule departed from the pre-existing rule and practice regarding the treatment of Part C patient days in the DSH payment and has not explained any good reason for that change. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Likewise, the Secretary has never acknowledged the enormous adverse financial impact on hospitals of the 2004 policy change, nor has the Secretary ever explained why the policy change is appropriate despite that adverse impact on the nation's safety-net hospitals, like the plaintiff hospitals, that shoulder the financial burden of treating a disproportionate share of low-income patients.

62. The Secretary's DSH payment determinations are therefore arbitrary and capricious and, consequently, invalid under the APA. 5 U.S.C. § 706(2).

**COUNT IV– VIOLATION OF STATUTORY PROVISION FOR DSH PAYMENTS**

63. The Secretary's new rule treating Part C days as Part A days is contrary to the intent of Congress in enacting the statutory provisions for DSH payments and fails the reasonableness test under *Chevron* step two. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The Part C days policy "conflict[s] with the policy judgments that undergird the statutory scheme," *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 416 (D.C. Cir. 1994), and is impermissible, *see Goldstein v. SEC*, 451 F.3d 873, 883 (D.C. Cir. 2006) (rejecting policy under *Chevron* step two where it was not "rational when viewed in light of the policy goals underlying the" applicable statute).

64. The Secretary's DSH payment determinations therefore violate the Medicare Act's provision for DSH payments, 42 U.S.C. § 1395ww(d)(5)(F), and are also invalid under the APA, 5 U.S.C. § 706(2).

## REQUEST FOR RELIEF

65. The plaintiff hospitals request an Order:

   a. declaring invalid and setting aside the Secretary's final decision including Part C patient days in the Part A/SSI fraction and excluding Medicaid-eligible Part C patient days from the numerator of the Medicaid fraction used to calculate the plaintiff hospitals' Medicare DSH calculations for the cost reporting periods at issue;

   b. directing the Secretary to recalculate the plaintiff hospitals' DSH payments consistent with the law and to make prompt payment of any additional amounts due the plaintiff hospitals, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

   c. requiring the Secretary to pay legal fees and cost of suit incurred by the plaintiff hospitals; and

   d. providing such other relief as the Court may consider appropriate.

Respectfully submitted,

/s/ John R. Jacob

John R. Jacob
 D.C. Bar No. 444412
Caroline L. Wolverton
 D.C. Bar No. 496433
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 887-4582
Fax: (202) 887-4288
jjacob@akingump.com

Counsel for Plaintiffs

Dated: April 14, 2020